██ In the Matter of AUDREY I. and Others, Children Alleged to be Permanently Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WILLIAM G. et al., Appellants. [870 NYS2d 504]—

Malone Jr., J. 

Respondent Amy G. is the mother of Audrey I. (born in 1996), Robert I. (born in 2000) and Katerine G. (born in 2002).[1] Respondent William G. is Katerine's father and stepfather to Audrey and Robert. In March 2004, based upon a report of suspicious bruising on Audrey for which respondents had no adequate explanation, petitioner removed the children from respondents' custody and placed them in foster care. In September 2004, with respondents' consent, Family Court adjudicated the children to be neglected and continued their placements in foster care. Petitioner thereafter commenced the instant proceeding pursuant to Social Services Law § 384-b, alleging that respondents had permanently neglected the children. Following a fact-finding hearing, Family Court adjudicated the children to be permanently neglected and ultimately terminated respondents' parental rights.[2] Respondents now separately appeal.

In a permanent neglect proceeding, the petitioning agency must establish by clear and convincing evidence that it made "diligent efforts to encourage and strengthen the parental relationship" and that, as is relevant here, despite those efforts, the parent has failed to plan for the child's future for a period of one year after the child was removed from his or her care, although physically and financially able to do so (Social Services Law § 384-b [7]; see Matter of Sheila G., 61 NY2d 368, 373 [1984]). More specifically, planning for the child's future requires the parent "to take such steps as may be necessary to provide an adequate, stable home and parental care for the child" (Social Services Law § 384-b [7] [c]), including the " 'utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent' " (Matter of George M., 48 AD3d 926, 927 [2008], quoting Matter of James X., 37 AD3d 1003, 1006 [2007]).

Here, contrary to respondents' contentions, petitioner adequately established that it assisted and encouraged a meaningful relationship between respondents and the children by, among other things, working with respondents to coordinate appropriate services for the family, arranging suitable visitation

---

1. Amy G. has one other child, born in 2007, who remains in her custody.

2. William G.'s parental rights were terminated only as to Katerine inasmuch as he had no parental rights with respect to the other two children.

for each respondent[3] and keeping respondents informed of each child's progress (*see* Social Services Law § 384-b [7] [f]; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]). In addition, petitioner established by clear and convincing evidence that respondents permanently neglected the children. Specifically, William G. failed to acknowledge or take responsibility for the problems that led to the children's removal from his custody, failed to satisfactorily complete the recommended counseling services to overcome his significant anger management issues, and continued to harbor significant animosity toward Amy G., despite their separation (*see* Social Services Law § 384-b [7] [c]). Moreover, at the supervised visits, William G. was often dismissive of the children or was unnecessarily stern. He also admitted that he was not capable of providing Katerine with a proper home any time in the foreseeable future and requested that permanent custody of her be awarded to his parents. The foregoing was sufficient to establish that William G. permanently neglected Katerine by failing to adequately plan for her future and appropriately determined that her best interests were served by terminating his parental rights (*see Matter of George M.*, 48 AD3d at 928; *Matter of Lisa Z.*, 278 AD2d 674, 677 [2000]).

With respect to Amy G., although she participated in parenting classes and other services as provided by petitioner, testimony at the fact-finding hearing established that, during the relevant time period, she did not meaningfully benefit from those services or otherwise express insight into the circumstances that caused the children's removal from her care. Significantly, Amy G. repeatedly offered inconsistent explanations for Audrey's bruises, at first denying any knowledge of them but then admitting that, although she suspected that William G. was abusing Audrey, she chose to ignore the problem. Overall, Amy G. was resistant to address the problems that led to the children's removal from the home and minimized her role in the children's neglect. This was sufficient to support the determination that Amy G. also permanently neglected the children by failing to plan for their future (*see Matter of Melissa DD.*, 45 AD3d 1219, 1221 [2007], *lv denied* 10 NY3d 701 [2008]; *Matter of Elijah NN.*, 20 AD3d 728, 729-730 [2005]).

However, testimony at the dispositional hearing established that, beginning approximately six months prior to the filing of the instant petition, Amy G. began to make some progress in

---

**3.** It is noted, however, that petitioner appropriately terminated William G.'s visitation with his stepchildren, Audrey and Robert, after the children's psychiatrist determined that his visits were harmful to them.

her therapeutic counseling sessions and separated herself from William G.'s unhealthy influence. Amy G.'s testimony revealed that she was remorseful for her behavior, was seeking employment and was otherwise preparing for the children's return to her. She acknowledged her children's mental health needs and expressed a willingness to cooperate with petitioner to obtain for herself and the children counseling services that were necessary to regain custody of them. There is no dispute that Amy G. has actively participated in her visitation with the children and, by all accounts, has enjoyed appropriate and meaningful interactions with them. The children, for their part, although adapting to their current foster care situations, expressed interest in being returned to their mother's care.

Based on testimony presented at the dispositional hearing, a suspended judgment, rather than termination of Amy G.'s parental rights, would have served the children's best interests (*see Matter of Lisa Z.*, 278 AD2d at 680) as she has "demonstrate[d] the ability to be a fit parent" and has a significant desire to regain custody of the children (*Matter of Angela LL.*, 287 AD2d 823, 824 [2001]; *see* Family Ct Act.§ 631 [b]; § 633; *compare Matter of Angelica VV.*, 53 AD3d 732 [2008]). Moreover, although the children had been in foster care for nearly four years, there was no testimony presented at the hearing that any of the children's foster parents were willing to adopt them. Thus, freeing them for adoption did not provide any reasonable assurance that they would be provided with a stable and permanent home in the near future (*compare Matter of Maelee N.*, 48 AD3d 929 [2008], *lv denied* 10 NY3d 709 [2008]; *Matter of Jayde M.*, 36 AD3d 1168 [2007], *lv denied* 8 NY3d 809 [2007]; *Matter of Raena O.*, 31 AD3d 946 [2006]). Accordingly, as we do not find that the children's best interests necessitates the termination of Amy G.'s parental rights, we reverse that determination and remit to Family Court for further dispositional proceedings, namely, the entry of a suspended judgment whose conditions and duration should be determined by that court.

Mercure, J.P., Spain, Carpinello and Stein, JJ., concur. Ordered that the order is modified, on the law and facts, without costs, by reversing so much thereof as terminated the parental rights of respondent Amy G.; matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.