■ In the Matter of JULIETTE JJ., a Child Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; PARRIS JJ., Appellant. [916 NYS2d 363]—

Garry, J. Appeals from two orders of the Family Court of Schenectady County (Assini, J.), entered October 28, 2009 and March 12, 2010, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Juliette JJ. to be a permanently neglected child, and terminated respondent's parental rights.

Respondent and his wife are the parents of Juliette JJ. (hereinafter the child). The child was removed from her parents' care shortly after her birth in 2001 because respondent was allegedly allowing the wife, who has been diagnosed with schizophrenia, to care for her. The child was thereafter returned to her parents' care but then again removed in October 2006. Respondent consented to a finding of neglect, and care and custody of the child by petitioner was continued. In August 2008, petitioner commenced separate permanent neglect proceedings seeking termination of both parents' parental rights. Following a fact-finding hearing, Family Court found that respondent had permanently neglected the child and, after a dispositional hearing, terminated his parental rights.[1] Respondent appeals from both orders.

To demonstrate permanent neglect, petitioner was required to show by clear and convincing evidence, as relevant here, that respondent "failed to plan for the child's future for a period of one year after the child was removed from his . . . care, although physically and financially able to do so" (*Matter of Audrey I.*, 57 AD3d 1172, 1173 [2008], *lv denied* 12 NY3d 704 [2009]; *see* Social Services Law § 384-b [7]; *Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]).[2] Respondent was therefore required to utilize available services as needed, provide an adequate, stable home environment and, at minimum, "take steps to correct the conditions that led to the removal of the child from [respondent's] home" (*Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986] [internal quotation marks omitted]; *see* Social Services Law § 384-b [7] [c]; *Matter of Alaina E.*, 59 AD3d 882, 885 [2009], *lv denied* 12 NY3d 710 [2009]).

Although respondent participated in numerous services

1. Respondent's wife was found to have permanently neglected the child and her parental rights were terminated on the basis of her severe and uncontrolled mental illness.

2. Respondent does not challenge Family Court's threshold determination that petitioner made the requisite "diligent efforts to encourage and strengthen [his] relationship" with the child (*Matter of Lawrence KK. [Lawrence LL.]*, 72 AD3d 1233, 1234 [2010], *lv denied* 14 NY3d 713 [2010] [internal quotation marks and citations omitted]).

provided by petitioner such as parent education and mental health counseling, the record indicates that he "did not meaningfully benefit from those services or otherwise express insight into the circumstances that caused the [child's] removal from [his] care" (*Matter of Audrey I.*, 57 AD3d at 1174). Petitioner's witnesses included a caseworker, a family specialist who supervised respondent's visits with the child, and a psychologist who evaluated the family three times over a 10-year period. Their testimony and that of respondent himself established that he does not fully appreciate the severity of his wife's mental illness or its impact on the child. The caseworker testified that respondent expressed reluctance to medicate his wife and claimed that, even though he has been unemployed since 2001, he did not have time to make sure she complied with treatment. Respondent testified that he believed that the only impact his wife's illness had on the child was a communication problem that was alleviated by his presence. However, the family specialist testified that the wife's rambling, violent comments often frightened the child during visits and that respondent did not intervene, even when directly asked to do so.

The testimony further revealed that respondent's own mental health issues negatively affect his ability to provide a safe, stable home for the child. According to the psychologist, these include obsessive compulsive disorder and anxiety so severe that respondent is unable to provide the child with adequate care and supervision. The psychologist testified that the child suffers from significant developmental delays which he opined were caused by her chaotic early upbringing in respondent's home. Respondent minimized these problems. He insisted that the child improved after she was placed in foster care only because she grew older, and he consistently failed to attend special education meetings or arrived too late to participate. Although respondent expressed sincere wishes for the child's return, he was unable to articulate any plans for such an eventuality beyond making sure that she was not left alone with his wife. Accordingly, clear and convincing evidence demonstrates that respondent permanently neglected the child by failing to make realistic plans for her future (*see Matter of Nahia M.*, 39 AD3d 918, 920-921 [2007]).

Finally, respondent contends that his parental rights should not have been terminated. "Following an adjudication of permanent neglect, the sole concern . . . is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (*Matter of Angelica VV.*, 53 AD3d 732, 733 [2008]

[citations omitted]; *see* Family Ct Act § 631). Although respondent plainly loves and cares for the child, the record indicates that he has been unable "to ameliorate the problems that led to [her] placement" (*Matter of Darren V.*, 61 AD3d 986, 988 [2009], *lv denied* 12 NY3d 715 [2009]). During the child's years in foster care, respondent was unable to progress beyond supervised visitation. The family specialist testified that his original goal was to improve respondent's parenting skills but that, instead, respondent continued to need assistance simply in managing the child during visits. This witness and others further testified that the child consistently expressed reluctance to have contact with respondent and his wife, tried to avoid them by clinging to teachers and other adults, and anxiously awaited the foster mother's arrival at the end of visits. The foster mother testified that the child has become part of her family and that she wanted the child to stay with them. Thus, a sound and substantial basis in the record exists to support Family Court's determination that termination of parental rights is in the child's best interests (*see Matter of Keegan JJ. [Amanda JJ.]*, 72 AD3d 1159, 1162 [2010]; *Matter of Kayla KK. [Tracy LL.]*, 68 AD3d 1207, 1209 [2009], *lv denied* 14 NY3d 707 [2010]).

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.