■ In the Matter of SHARON V., Appellant, v MELANIE T., Respondent. (Proceeding No. 1.) In the Matter of ROBERTO Y., a Child Alleged to be Permanently Neglected. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MELANIE T., Appellant. (Proceeding No. 2.) [925 NYS2d 231]—

Rose, J. Appeals from an order of the Family Court of Chemung County (Brockway, J.), entered October 5, 2010, which (1) dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of her grandchild, and (2) granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.

Petitioner Chemung County Department of Social Services

(hereinafter DSS) removed Roberto Y. (born in 2003) from the home of respondent (hereinafter the mother) immediately after the child witnessed the accidental death of his seven-month-old brother. Although the children had been in the care of the maternal grandmother, petitioner Sharon V., she voluntarily returned them to the mother just before the accident. The children were then left unattended while the mother slept, and the younger brother died as a result of asphyxiation and burns after he climbed into an open oven and it fell on top of him. Both children's bodies were encrusted with feces and the apartment was unsafe and unsanitary. The mother, whose parental rights to two other children had previously been terminated due to domestic violence and substance abuse, consented to a finding of neglect with respect to Roberto. Over 2¹/₂ years later, the grandmother filed a petition for custody of Roberto (proceeding No. 1) and DSS commenced a permanent neglect proceeding (proceeding No. 2). Family Court then determined that the child was permanently neglected, terminated the mother's parental rights and denied the grandmother's petition for custody. Although the grandmother also informally sought visitation with the child, the court instead permitted contact to the extent that the foster parents, who had expressed a desire to adopt this special needs child, agreed. The mother and grandmother appeal, and we now affirm.

The mother initially contends that DSS failed to engage in diligent efforts to encourage and strengthen the parent-child relationship (see Social Services Law § 384-b [7] [a], [f]; Matter of Gregory B., 74 NY2d 77, 86 [1989]; Matter of Laelani B., 59 AD3d 880, 881 [2009]; Matter of Isaiah F., 55 AD3d 1004, 1005 [2008]). While she concedes that services were provided, she argues that DSS failed to appropriately tailor them to address her specific needs. Our review of the record, however, reveals that, although an appropriate service plan was offered, the mother's participation was marked by inconsistency, delay and noncompliance. While she eventually completed a number of the offered services, including parenting classes, a drug and alcohol assessment, a domestic abuse program and a protective parenting program, she failed to demonstrate a consistent ability to understand or apply the relevant information and skills.

Specifically, the mother was offered appropriate counseling and, although she completed some of it, she was resistant to any further grief counseling regarding the death of the younger child and failed to acknowledge any role in that tragedy. As for the mother's claim that she should have had assistance in obtaining housing, no such assistance could remedy the safety

problem preventing the return of the child. Despite repeated advice from DSS to end her relationship with a felon who had a history of domestic violence and drug use, and who had been ordered to have no contact with the child, she continued the relationship and eventually married him, thus making her home unsafe for the child's return. With respect to visitation, DSS assisted the mother by scheduling twice-weekly sessions and providing transportation, but her participation remained inconsistent and she failed to take advantage of the mandatory processing appointments designed to assist her with essential feedback. In short, the mother showed little "initiative and responsibility for making [the service] plan work" (*Matter of Daniel AA.*, 241 AD2d 703, 704 [1997]), and DSS "was not obligated to accommodate [her] lack of insight by formulating an alternative plan" (*Matter of Alycia P.*, 24 AD3d 1119, 1121 [2005]).

Diligent efforts having been established, DSS is required to demonstrate that the parent has, as relevant here, failed to substantially plan for the child's future by taking the steps necessary to provide a stable and adequate home environment (*see* Social Services Law § 384-b [7] [a]; *Matter of Gregory B.*, 74 NY2d at 87; *Matter of Star Leslie W.*, 63 NY2d 136, 142-143 [1984]). As we have noted, the mother failed to acknowledge any responsibility in the death of the younger child, she continued her relationship with her now-husband despite the barrier it raised to the return of the child, and she failed to fully engage or benefit from the services offered. Accordingly, there is ample support for Family Court's thorough and well-reasoned decision finding permanent neglect (*see Matter of Juliette JJ. [Parris JJ.]*, 81 AD3d 1112, 1114 [2011]; *Matter of James U. [James OO.]*, 79 AD3d 1191, 1193 [2010]; *Matter of Sierra C. [Deborah D.]*, 74 AD3d 1445, 1447 [2010]).

At the dispositional phase of the permanent neglect proceeding, the grandmother's custody petition was also heard. At that stage, the sole basis of inquiry was the best interests of the child, with no presumption that any particular disposition would promote those interests (*see* Family Ct Act § 631; *Matter of Carolyn S. v Tompkins County Dept. of Social Servs.*, 80 AD3d 1087, 1089 [2011]; *Matter of Deborah F. v Matika G.*, 50 AD3d 1213, 1214-1215 [2008]). Where, as here, a blood relative seeks custody of the child, that person "does not take precedence over a prospective adoptive parent selected by the authorized agency" (*Matter of Deborah F. v Matika G.*, 50 AD3d at 1215). Rather, the relative fitness of the mother, the grandmother and the foster parents are considered and, although the mother claims that

a suspended judgment would have been appropriate, we find no basis to disturb Family Court's conclusion that termination of her parental rights was in the child's best interests (*see Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986]; *Matter of Kayla KK. [Tracy LL.]*, 68 AD3d 1207, 1209 [2009], *lv denied* 14 NY3d 707 [2010]; *Matter of Melissa DD.*, 45 AD3d 1219, 1221 [2007], *lv denied* 10 NY3d 701 [2008]).

Although the grandmother had ongoing, appropriate contact with the child throughout his life, the child was bonded with his foster parents, having been in their care for over 2½ years before the grandmother filed her petition. The foster parents were willing to adopt the child, and his own therapist testified that he needed the continued stability that only they could provide to deal with his special needs and the trauma he had experienced in witnessing his brother's death. Giving due deference to Family Court's ability to assess the credibility of the witnesses, and finding a sound and substantial basis in the record to support its findings, we will not disturb the denial of the grandmother's petition for custody (*see Matter of Deborah F. v Matika G.*, 50 AD3d at 1215; *Matter of Donald W.*, 17 AD3d 728, 730 [2005], *lv denied* 5 NY3d 705 [2005]).

Finally, we reject the grandmother's contention that Family Court improperly delegated its authority to the child's therapist to determine her posttermination visitation. The grandmother did not petition for visitation, nor was it awarded. Family Court merely conditioned DSS's custody on, among other things, continued contact with the grandmother, as agreed upon by the parties, "in likely consultation with [the child's] therapists." Family Court has the authority, pursuant to Family Ct Act § 634, to commit the child to DSS's custody on such conditions as it deems proper. Given Family Court's denial of custody and the grandmother's failure to formally request visitation, we find no basis to conclude that the court delegated its authority regarding visitation or otherwise imposed an improper condition on the disposition.

Peters, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.