In the Matter of JADEN C., a Child Alleged to be Neglected. PHILLIP J., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent, et al., Respondent. [936 NYS2d 8]—

The father testified at the fact-finding hearing that he accompanied his then eight-month-old child and the child's

mother[1] from his home in Queens to the maternal grandmother's home in the Castle Hill neighborhood of the Bronx. When they arrived, he took the child to a bedroom and got him ready for bed. After placing the child in the playpen, he told the mother he was going to leave, instead of staying the night like he originally planned. According to the father, the mother started a fight with him, and the grandmother blocked the door when he tried to leave the apartment.

The father further testified that, as he was trying to get around the grandmother, the maternal uncle and his girlfriend started banging and kicking the apartment door. According to the father, when the grandmother opened the door, the uncle ran inside and told the father he was going to murder him right now. Then the uncle ran to the back bedroom and returned with a gun. He pointed the gun at the father and pulled the trigger, but the gun jammed and the cartridges fell to the floor. The father grabbed a box cutter from his pocket, swung, and cut the uncle on the hand. The uncle then took the gun and repeatedly hit the father on the head, causing him to bleed profusely. While the uncle and father were fighting, the uncle's girlfriend was standing in the same room, holding the child. The father again attempted to leave and was able to run out the front door and onto the street, where he flagged down a police car. The child was not physically injured during the fight.

The court, accepting the father's testimony regarding the chain of events, found that the father showed poor judgment in deciding to accompany the mother and child in the first place. In reaching this conclusion, the court noted that the father had suspicions of drug dealing at the location and had a criminal history, albeit remote in time, which showed some familiarity with illegal narcotics activity.

A determination of neglect requires "first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]). Petitioner presented no evidence to establish that the father knew or should have known that going to the grandmother's apartment would result in a dangerous situation for himself, the child's mother or his child. In support of its case, petitioner

---

1. The mother entered a 1051A submission to the court's jurisdiction, which resulted in a finding of neglect without admission based on all allegations in the petition.

relied on the father's statement to a caseworker, during an interview the day after the incident, that the mother's uncle was in the apartment when he arrived and that the uncle had threatened him previously. However, the father offered a different version of the events at the hearing and the court did not make any findings crediting the caseworker's account. Moreover, even if the uncle was in the apartment when the father arrived, and had threatened him prior to the subject incident, that does not establish that the father should not have gone there in the first place. There is no proof that the father knew the uncle's whereabouts when he agreed to escort the mother to the location. Nor does it explain how accompanying the mother and child, in and of itself, would be neglect especially since the father testified he did this because it was a dangerous neighborhood.

The court improperly relied upon the notation in a caseworker's notes that the uncle was a known drug dealer and kept drugs, drug records and weapons in the grandmother's apartment. This information was provided by an emergency room doctor who did not testify at the hearing.[2] The court incorrectly attributed this statement to the father, though the source of the doctor's information is unknown. "[O]nly competent, material and relevant evidence may be admitted" at the fact-finding hearing (Family Ct Act § 1046 [b] [iii]). Although a caseworker's notes may be admissible as a business record if petitioner can establish that the notes were made in the ordinary course of business (*Matter of Isaiah R.*, 35 AD3d 249, 249-50 [2006]), to render the entire statement admissible under the business records exception, all the participants in the chain must be under a business duty to record the information and must be acting within the scope of that duty (*Matter of Leon RR*, 48 NY2d 117, 122 [1979]). Here, we have no idea who provided this information to the doctor and cannot determine whether it was the father, the police or someone else. Even though the doctor is under a duty to report suspected child abuse and maltreatment (Social Services Law § 413), the critical statement was not based on the doctor's own knowledge or observations made in the course of treating the father. In the absence of any information about the source, there is no way to ascertain whether the information given the doctor came from someone who also had a business duty to report it or would be admissible under another hearsay exception.

Petitioner concedes that the court improperly admitted both

---

**2.** The caseworker who testified at the hearing was not the person who spoke to the doctor.

the father's criminal history and that of the uncle; thus, this evidence cannot be relied on as a basis for sustaining the neglect finding. Similarly, the fact that a fight ultimately occurred between the uncle and the father cannot support a neglect finding in the absence of any proof that the father was the person who brought the gun to the location or that he was the aggressor in the incident. Moreover, this was not the theory on which the court made its neglect finding.

Beyond the inadmissible hearsay contained within the caseworker's notes, petitioner did not provide any evidence that the father knew or should have known of the uncle's drug dealings, knew of the presence of drugs and weapons in the grandmother's home, or knew the uncle would be there when he escorted the mother to the location. Further, the father testified at the hearing, but petitioner never asked the father about these issues. Thus, the father's decision to accompany his child and the child's mother to the grandmother's house, even if it was poor judgment, did not amount to an actual failure to provide a minimum degree of care (Family Ct Act § 1012 [f] [i] [B]; *see Nicholson*, 3 NY3d at 368). Concur—Saxe, J.P., Friedman, Moskowitz, Freedman and Richter, JJ.