Kavanagh, J.
Appeals from five orders of the Family Court of Cortland County (Campbell, J.), entered May 9, 2011, May 10, 2011, July 25, 2011 and July 29, 2011, which granted petitioner’s applications, in four proceedings pursuant to Social Services *1282 Law § 384-b, to adjudicate the subject children to be abandoned and/or permanently neglected, and terminated respondents’ parental rights.
Respondent Jessica J. (hereinafter the mother) is the mother of two girls, Arianna I. (born in 2004) and Jessalyn J. (born in 2006). Respondents Charles K. and Roger I. are the fathers of Jessalyn and Arianna, respectively. In October 2009, petitioner removed both children from the mother’s custody, because, in addition to engaging in conduct indicating that she had significant mental health problems, she was in an abusive relationship and had previously assaulted Jessalyn. At the time the children were removed from her custody, Charles was incarcerated and Roger had only recently been released from prison. After a temporary order of protection was entered barring the mother from having any contact with the children, Family Court adjudicated both girls to be neglected and, upon consent, entered a dispositional order requiring that they remain in petitioner’s custody. The order also required that the mother undergo mental health counseling, avoid violent conduct, submit to drug and alcohol evaluations, participate in certain programming and make suitable arrangements so that the children could safely reside with her.
In November 2010, petitions were filed seeking to terminate respondents’ parental rights. Specifically, the petitions alleged that the mother had permanently neglected both children, Charles had permanently neglected Jessalyn, and Roger had abandoned Arianna. Following fact-finding hearings, Family Court found that Jessalyn had been permanently neglected by her parents, and Arianna, in addition to being abandoned by Roger, had been permanently neglected by the mother. A dispositional hearing was held, after which the court terminated respondents’ parental rights and freed the children for adoption. Respondents, as well as the attorney for the children, now appeal.[1]
Initially, we note that petitioner established by clear and convincing evidence that it made diligent efforts to promote a constructive relationship between the mother and the two children (see Social Services Law § 384-b [7] [a]; Matter of James J. *1283 [James K.], 97 AD3d 936, 936 [2012]; Matter of Havyn PP. [Morianna RR.], 94 AD3d 1359, 1360 [2012]). In that regard, we note the uncontroverted testimony of petitioner’s caseworker that, in addition to establishing a visitation schedule and arranging for the mother to participate in various programming, the caseworker met with the mother monthly to discuss a service plan for the children (see Matter of James J. [James K.], 97 AD3d at 937; Matter of James X., 37 AD3d 1003, 1006 [2007]). Moreover, the mother not only failed to faithfully attend mental health counseling sessions, but did not complete any of the substance abuse programs arranged for her by petitioner. In addition, the mother continued to have contact with her former partner — with whom she had a violent relationship — and did not fully cooperate with petitioner’s caseworkers in their efforts to promote a constructive relationship between her and the children. This record, in our view, supports a finding that the mother did not make a meaningful attempt to plan for the children’s future and, as such, permanently neglected them (see Social Services Law § 384-b [7] [c]; Matter of James J. [James K.], 97 AD3d at 938; Matter of Tatianna K. [Claude U.], 79 AD3d 1184, 1185-1186 [2010]; see also Matter of Audrey I., 57 AD3d 1172, 1174 [2008], lv denied 12 NY3d 704 [2009]; Matter of Vashaun P., 53 AD3d 712, 716 [2008]).
While the mother has undoubtably permanently neglected the children, we do not agree, on this record, that termination of her parental rights at this time is in the children’s best interests (see Family Ct Act § 631; Matter of Eric G., 59 AD3d 785, 788 [2009]). In that regard, we note that the mother faithfully adhered to the weekly visitation schedule and, throughout this proceeding, sought to maintain contact with the children. She acted appropriately with the children during these visits, and petitioner concedes that the contact she had with the children during these visits had a beneficial impact on them. Moreover, each child enjoys a strong emotional attachment with the mother and, according to the attorney for the children, has expressed a desire to live with her. While we are mindful of the mother’s prior failure to complete therapy and programming, “[a] suspended judgment is intended to provide an opportunity — in effect, a second chance — for reunification of parent and child” (Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 428 n 3 [2012]). Since these proceedings began, the mother has obtained suitable housing and has expressed a willingness to participate in programming and mental health counseling as required by petitioner. Significantly, the attorney for the children states that they have not fared well in foster care and the foster parents are not seeking to adopt them. On this record, the immediate *1284 termination of the mother’s parental rights is not in the children’s best interests, and a suspended judgment with appropriate conditions should be entered by Family Court (see Matter of Eric G., 59 AD3d at 786; see also Matter of Krystal B. [Thomas B.], 77 AD3d 1110, 1111 [2010]). As a result, the order terminating the mother’s parental rights must be modified in this regard and the matter remitted for the entry of a suspended judgment, the duration of which, as well as the essential conditions, to be determined by Family Court.
As for the abandonment of Arianna by her father, petitioner was required to show by clear and convincing evidence that, during the period of at least six months prior to the petition being filed, Roger “evince[d] an intent to forego his . . . parental rights and obligations as manifested by his . . . failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency” (Social Services Law § 384-b [5] [a]; see Social Services Law § 384-b [3] [g] [i]; [4] [b]; Matter of Stephen UU. [Stephen VV.], 81 AD3d 1127, 1128 [2011], lv denied 17 NY3d 702 [2011]). Here, Roger and the attorney for the children argue that petitioner effectively prevented Roger from communicating with his daughter during the relevant time period (see Matter of Jamaica M. [Hakeem N.], 90 AD3d 1105, 1106 [2011], lv denied 18 NY3d 806 [2012]; Matter of Ryan I. [Laurie U.], 82 AD3d 1524, 1526 [2011]). In that regard, Roger testified that in November 2009, he went to petitioner’s office seeking to see Arianna,[2] but was told by a caseworker that to have any contact with the child he would have to file a petition in Family Court. Roger claims that he received no assistance in preparing such an application.
The caseworker provides a very different description of her contact with Roger. She testified that Roger was provided with copies of relevant correspondence regarding the proceeding, including reports detailing the service plan in place for the child, as well as letters notifying him of her foster care placement and his child support obligations. She acknowledged informing Roger that he had to go to Family Court to gain access to Arianna and admits to harboring reservations about Roger having any contact with the child because he was living with a woman who had a Child Protective Services history and never had custody of the child since he had only recently been released from prison. The caseworker also testified that her only contact with Roger was in November 2009 and that, to her *1285 knowledge, he did not again contact the agency during the relevant time period, or make any other attempts to gain access to his child. Based on this record, we cannot conclude that Roger has proven that petitioner interfered with his efforts to have contact with Arianna (see Matter of Ryan Q. [Eric Q.], 90 AD3d 1263, 1265 [2011], lv denied 18 NY3d 809 [2012]), and Family Court’s determination that he abandoned her is supported by the record evidence (see Matter of Lily LL. [Eric MM.], 88 AD3d 1121, 1123 [2011]; Matter of Devin XX., 20 AD3d 639, 640 [2005]).
Charles claims — and the attorney for the children agrees— that petitioner failed to make diligent efforts to foster a constructive relationship between him and Jessalyn. In circumstances involving incarcerated parents, diligent efforts may include “apprising the incarcerated parent of the child’s well-being, developing an appropriate service plan, investigating possible placement of the child with relatives suggested by the parent, responding to the parent’s inquiries and facilitating telephone contact between the parent and child” (Matter of James J. [James K.], 97 AD3d at 937 [internal quotation marks and citations omitted]; see Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1138-1139 [2012], lv denied 19 NY3d 801 [2012]; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266 [2011], affd 19 NY3d 422 [2012]). Here, a caseworker testified to receiving a letter from Charles in November 2009, after Jessalyn had been placed in foster care, indicating that the mother had neglected the child and stating that his daughter would be better off being allowed to live with a family member as opposed to being placed in foster care. Petitioner’s caseworker acknowledged knowing that Charles’s brother had sought custody of Jessalyn in Family Court and admits not investigating whether allowing the child to reside with this individual would have been preferable to her being placed in foster care. Moreover, petitioner’s caseworker testified that Charles requested visitation with the child and stated that he would seek custody upon his release from prison.[3] We also note that despite Charles’s efforts to secure visitation with Jessalyn, petitioner’s caseworker did not attempt to arrange any contact between him and the child, nor did she meet with Charles.
While Charles’ incarceration undoubtedly posed significant problems for petitioner in promoting a constructive relationship with his daughter, that circumstance alone does not relieve the agency of its statutory obligations in that regard (see Matter of *1286 James J. [James K.], 97 AD3d at 936-937). Here, there is simply no evidence indicating that petitioner’s caseworker made more then a cursory attempt to promote a constructive relationship between Charles and his daughter and, for that reason, the petition against him must be dismissed (see Matter of Shi’ann FF., 47 AD3d 1133, 1135 [2008]; Matter of Jawan Y., 274 AD2d 696, 697-698 [2000]; compare Matter of James J. [James K.], 97 AD3d at 937-937).
Rose, J.E, Lahtinen, Spain and McCarthy, JJ., concur. Ordered that the order entered May 9, 2011 finding that respondent Roger I. abandoned Arianna I. is affirmed, without costs. Ordered that the appeals from the orders entered May 10, 2011 are dismissed, without costs. Ordered that the order entered July 25, 2011 finding that respondent Charles K. permanently neglected Jessalyn J. and terminated his parental rights is reversed, on the law, without costs, and petition dismissed. Ordered that the order entered July 29, 2011 terminating the parental rights of respondent Jessica J. is modified, on the law and facts, without costs, by reversing so much thereof as terminated her parental rights; matter remitted to the Family Court of Cortland County for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. The appeals by the mother, Charles and the attorney for the children from the fact-finding orders must be dismissed because no appeal lies as of right from a nondispositional order in a permanent neglect proceeding (see Matter of Alyssa L. [Deborah K.], 93 AD3d 1083, 1085 [2012]). However, their appeals from the dispositional orders bring up for review the appeals from the fact-finding orders (see Matter of Chase F. [Michael G.], 91 AD3d 1057, 1058 [2012], lv denied 19 NY3d 801 [2012]).

. Before Arianna was removed from the mother’s care, Roger frequently visited with the child, often on a weekly basis.

. In fact, Charles filed a petition — one that was ultimately dismissed in Family Court — attempting to have the child placed with a family member.