Appeals from five orders of disposition of the Family Court, Queens County (Carol A. Stokinger, J.) (one as to each child), all dated September 17, 2015. The orders, after a dispositional hearing, determined that the consent of the appellant Michael B., the father of the subject children James M.B., Jasmine A.B., and Joshua S.B., to the adoption of those children was not required and that he was not entitled to notice of any further proceedings concerning those children, terminated the parental rights of the appellant Claudia H., the mother of all five subject children, and transferred the guardianship and custody of the children to the Commissioner of the Administration for Children’s Services of the City of New York and Forestdale, Inc., for the purpose of adoption. The appeals bring up for review an order of fact-finding of that court dated July 14, 2014, which, after a fact-finding hearing, found that Michael B. was a notice father only, or in the alternative, that he had permanently neglected the children James M.B., Jasmine A.B., and Joshua S.B., and that the mother had permanently neglected all five children.
 

 Ordered that the orders of disposition are affirmed, without costs or disbursements.
 

 In these related proceedings pursuant to Social Services Law § 384-b to terminate parental rights on the ground of permanent neglect, Claudia H. is the mother of all five subject children. Michael B. is the father of three of the children: James M.B., Jasmine A.B., and Joshua S.B. The parents were not married. All five children were placed into foster care in July 2010. Petitions were filed in January 2012, alleging that the mother had permanently neglected the five children, and that the father had permanently neglected the children James M.B., Jasmine A.B., and Joshua S.B.
 

 Domestic Relations Law § 111 (1) (d) provides that the consent to the adoption of a child born out of wedlock and placed with the adoptive parents more than six months after birth is required of the father “only if such father shall have maintained substantial and continuous or repeated contact with the child as manifested by: (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father’s means, and either (ii) the father’s visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father’s regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child or prevented from doing so by the person or authorized agency having lawful custody of the child.” The agency is not required to make a showing of diligent efforts to encourage the father to perform the acts specified in the statute (see id.).
 

 Here, the Family Court’s determination that the father’s consent to the adoption of his children was not required was supported by clear and convincing evidence (see Matter of Janelle C. [Sean R.], 88 AD3d 787 [2011]; Matter of Sharissa G., 51 AD3d 1019, 1020 [2008]). The father’s incarceration did not absolve him of the responsibility to maintain regular contact with the children or the agency and to provide financial support for the children, nor did it establish as a matter of law that he did not have the means to provide financial support (see Matter of Anthony C.M. III [Anthony C.M.], 141 AD3d 718, 719 [2016]; Matter of Yamilette M.G. [Marlene M.], 118 AD3d 698, 699 [2014]; Matter of De’Von M.F.C. [Mustapha F.], 105 AD3d 738, 739 [2013]). The father’s testimony at the fact-finding hearing established that he did not provide financial support for the children either during or after his incarceration. Although the father claimed that he had called the agency numerous times, the court was not required to credit that testimony (see Matter of Isis S., 60 AD3d 1385 [2009]).
 

 The Family Court also did not err in finding that the mother had permanently neglected the children. The agency established by clear and convincing evidence that the mother failed for a period of either at least one year or 15 out of the most recent 22 months following the date the children came into its care substantially and continuously or repeatedly to plan for the future of the children, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship (see Social Services Law § 384-b [7] [a]). The mother failed to take the necessary steps to provide an adequate, stable home and parental care for the children within a reasonable period of time (see Social Services Law § 384-b [7] [c]). The mother’s mere participation in classes and programs was not enough to meet the requirement to plan for the children’s future when she did not benefit from the services, programs, and support offered and did not utilize the tools or lessons learned in those classes in order to successfully plan for the children’s future (see Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1005 [2017]; Matter of Aniya L. [Samantha L.], 124 AD3d 1001, 1004 [2015]). The mother failed to gain any insight into the problems that were preventing the children’s return to her care, and the evidence showed that the mother was unaware of how her actions affected her relationship with the children. Moreover, she never acknowledged her responsibility for the removal of the children from her care, and she failed to obtain adequate housing for the children (see Matter of Kira J. [Lakisha J.], 108 AD3d 541 [2013]; Matter of Shamika K.L.N. [Melvin S.L.], 101 AD3d 729, 730-731 [2012]; Matter of Dariana K.C. [Katherine M.], 99 AD3d 899, 901 [2012]).
 

 The mother’s contention that the Family Court erred in admitting the agency’s case record into evidence as a business record is without merit. A proper foundation for the admission of the case record was laid by the testimony of the agency administrative supervisor, who was familiar with the agency’s record-keeping practices (cf. Cadlerock Joint Venture, L.P. v Trombley, 150 AD3d 957, 959 [2017]). Each participant in the chain producing the record was acting within the course of regular business conduct (see Matter of Leon RR, 48 NY2d 117, 122 [1979]). The court providently exercised its discretion in limiting the records admissible to those entries made contemporaneously with the events reported or within a reasonable time thereafter (see CPLR 4518 [a]; cf. Matter of Dustin H., 40 AD3d 995, 996 [2007]).
 

 The mother’s remaining contention is without merit.
 

 Roman, J.R, Maltese, LaSalle and Barros, JJ., concur.