Matter of Makayla I. (Sheena K.) (2022 NY Slip Op 00223)





Matter of Makayla I. (Sheena K.)


2022 NY Slip Op 00223


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

530822
[*1]In the Matter of Makayla I. and Others, Alleged to be Permanently Neglected Children. Schenectady County Department of Social Services, Respondent; Sheena K., Appellant. (Proceeding No. 1.)
In the Matter of Makayla I. and Others, Alleged to be Permanently Neglected Children. Schenectady County Department of Social Services, Respondent; Caleb K., Appellant. (Proceeding No. 2.)

Calendar Date:December 15, 2021

Before:Garry, P.J., Egan Jr., Pritzker and Colangelo, JJ.

Paul J. Connolly, Delmar, for Sheena K., appellant.
Monique B. McBride, Albany, for Caleb K., appellant.
Christopher H. Gardner, County Attorney, Schenectady (Michael R. Godlewski of counsel), for respondent.
Patricia L. Countryman, Schenectady, attorney for the children.



Pritzker, J.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered January 14, 2020, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondents' parental rights.
Respondent Caleb K. (hereinafter the father) is the father of Annabella J. (born in 2009) and Caleb J. (born in 2012) and the stepfather of Makayla I. (born in 2004) (hereinafter collectively referred to as the children). Respondent Sheena K. (hereinafter the mother) is the mother of the children. In November 2013, the children were removed from respondents' home and placed into the care and custody of petitioner due to allegations that the paternal grandfather — who was Makayla's stepgrandfather — had sexually abused Makayla. Petitioner thereafter commenced neglect and abuse proceedings against, as relevant here, the mother and the father as to Makayla and derivative abuse as to Annabella and Caleb. Subsequently, Annabella revealed that the father had likewise committed sexual offenses against her. Thereafter, based on the mother's admissions to the petition pending against her, Family Court (Powers, J.) adjudicated Makayla to be a neglected child and Anabella and Caleb to be derivatively neglected children. Then, in August 2016, following a fact-finding hearing, the court determined, among other things, that Makayla was abused by the grandfather and the father, Annabella was abused by the father and derivatively abused by the grandfather, and Caleb was derivatively abused by the father and the grandfather. On appeal, this Court affirmed the court's findings (Matter of Makayla I. [Caleb K.], 162 AD3d 1139, 1142 [2018]).
The children remained in the care and custody of petitioner and, in August 2016, petitioner commenced this proceeding against the mother, seeking to adjudicate the children to be permanently neglected by her and to terminate her parental rights. Petitioner also commenced a separate permanent neglect proceeding against the father, seeking to terminate his parental rights to Annabella and Caleb. Following a fact-finding hearing on both petitions, Family Court (Burke, J.) determined that the children had been permanently neglected by the mother and that Annabella and Caleb had been permanently neglected by the father. Following a dispositional hearing, the court concluded that the children's best interests would be served by terminating respondents' parental rights and freeing the children for adoption. Respondents appeal.
"As relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly 'plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen [*2]the parental relationship.' As a threshold matter, the agency must prove — by clear and convincing evidence — that it made diligent efforts to encourage and strengthen the parent's relationship with the child" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1464 [2020], lv denied 36 NY3d 908 [2021], quoting Social Services Law § 384-b [7] [a]). To satisfy its duty of diligent efforts, "petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [2014] [citations omitted]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1170-1171 [2018]).
The record reveals that petitioner regularly conducted service plan reviews so as to evaluate respondents' progress toward the permanency goals and address their issues in meeting those goals. To assist them, petitioner provided respondents with mental health evaluations and services. Petitioner also provided them with parenting classes and coached supervised visits with the children. Also, contrary to respondents' contention, the record reveals that they were advised by petitioner's caseworker that "they needed to acknowledge the abuse" and that their failure to do so impacted the ability to plan for the future of the children. The mother was additionally provided with services and aid for her particular needs, such as securing health insurance coverage and temporary housing in light of the indications of domestic abuse against her. As such, Family Court did not err in determining that petitioner satisfied its threshold burden of establishing that it exercised diligent efforts to encourage and strengthen the parental relationship (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1240-1241 [2021], lvs denied 37 NY3d 901 [2021]; Matter of Dawn M. [Michael M.], 174 AD3d 972, 973-974 [2019], lv denied 34 NY3d 907 [2020]; Matter of Logan C. [John C.], 169 AD3d 1240, 1242-1243 [2019]).
Petitioner also "satisfied its burden of proving by clear and convincing evidence that respondents failed to substantially plan for the child[ren's] future. 'To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child[ren's] initial removal. The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough'" (Matter of Jase M. [Holly N.], 190 AD3d at 1241 [brackets omitted], quoting Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1172; see Social Services Law § 384—b [7] [c]). "As relevant to whether a parent has so planned, the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services [*3]and material resources made available to such parent" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 980 [2019] [internal quotation marks and citations omitted]; see Matter of Kapreece SS. [Latasha SS.], 128 AD3d 1114, 1115-1116 [2015], lv denied 26 NY3d 903 [2015]).
The record supports Family Court's determination that, despite petitioner's diligent efforts, respondents failed to meaningfully plan for the children's future for a period of at least one year. The testimony at the hearing, including respondents' own admissions, evinces that both respondents failed to attend several scheduled meetings with their caseworkers and therapist. Significantly, respondents often missed service plan review meetings and sessions with their caseworker, thus hindering petitioner's work in providing them with particularized assistance. Their caseworker and therapist testified that, when respondents did attend sessions, they did not exhibit any progress towards achieving the permanency goals. More specifically, the father regularly exhibited a short temper and aggressive behavior and the mother failed to provide any insight into the work done with petitioner, at times offering no response when asked about her progress. The father also did not permit the mother to talk at one session with the therapist, thus impeding her progress in this regard. Nonetheless, the mother, at one point, acknowledged that she had not made any progress towards meeting the permanency goals. Relatedly, the father admitted that he did not engage in mental health treatment, despite being diagnosed with bipolar depression. Similarly, the mother admitted that she did not participate in mental health treatment during periods when she did not have health insurance, despite petitioner's efforts in helping her secure coverage.
Importantly, as Family Court found, the hearing record evinces that respondents failed to acknowledge the allegations of sexual abuse against Makayla and Annabella. To that end, although the mother at one point secured temporary housing separate from the father upon domestic violence allegations, she ultimately resided with him despite petitioner's recommendations to the contrary and the fact that court orders prohibiting contact between the father and Annabella were in place. The mother also, for some time, continued to live with the grandfather and allowed him to transport her to sessions with the children's therapists and her caseworker. This unwillingness by respondents to acknowledge the children's allegations of abuse substantially hindered petitioner's work with them and the children. Contrary to respondents' assertion, the fact that they complied with some of petitioner's directives does not warrant a different finding given that "a parent's ongoing refusal or inability to acknowledge and correct conditions that required the children's removal in the first instance may be deemed to constitute a failure to plan for their future," as is the case here [*4](Matter of Asianna NN. [Kansinya OO.], 119 AD3d 1243, 1247 [2014], lv denied 24 NY3d 907 [2014]; see Matter of Lisa Z., 278 AD2d 674, 677 [2000]). Based on the foregoing, and according deference to the court's credibility assessments and factual determinations, there is a sound and substantial basis in the record supporting the court's determination that respondents permanently neglected the children (see Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1162 [2014], lv denied 24 NY3d 918 [2015]; Matter of Asianna NN. [Kansinya OO.], 119 AD3d at 1247; Matter of Sharon V. v Melanie T., 85 AD3d 1353, 1355 [2011]).
The mother also contends that the permanent neglect proceeding seeking to terminate her parental rights as to Makayla was improperly brought, as petitioner failed to simultaneously initiate termination proceedings against Makayla's biological father.[FN1] However, this argument is unpreserved by virtue of her failure to raise it before Family Court (see Matter of Xavier XX. [Godfrey YY.], 192 AD3d 1210, 1211 [2021]; Matter of Clark v Ingraham, 88 AD3d 1079, 1079 [2011]). Although "this Court has inherent authority to exercise its discretion and correct fundamental errors" such as the one alleged here (Matter of Xavier XX. [Godfrey YY.], 192 AD3d at 1211 [internal quotation marks, brackets and citation omitted]; see Matter of Liska J. v Benjamin K., 174 AD3d 966, 968 [2019]), we decline to exercise this discretion given that the proceeding was "commenced within the context of an over-all endeavor by [petitioner] to achieve [the] goal" of freeing the child for adoption by seeking the termination of both parents' rights (Matter of Latif HH, 248 AD2d 831, 832 [1998]; see Matter of Cherokee C. [Matthew C.], 173 AD3d 1573, 1574 [2019]), as evidenced by the abandonment petition subsequently commenced by petitioner against the biological father, of which we take judicial notice.[FN2]
The mother also asserts that Family Court precluded her from presenting a defense that the father did not abuse Annabella or allow the grandfather's abuse of Annabella by, among other things, precluding testimony of a sexual abuse expert. This assertion is misplaced. The mother, by way of her proffered defense, sought to establish that the father and/or the grandfather had not abused Annabella. This issue, however, was not the relevant inquiry in this permanent neglect proceeding (see Social Services Law § 384-b [7]). In fact, the abuse of Annabella by the father and the grandfather had already been determined by Family Court (Powers, J.) and that determination was affirmed by this Court on appeal (Matter of Makayla I. [Caleb K.], 162 AD3d at 1142). Moreover, Family Court (Burke, J.) properly took judicial notice of these findings (Family Ct Act § 1046 [a] [i]). Thus, we discern no error in Family Court's preclusion of evidence relating to the validity of the underlying abuse findings. More specifically, the mother's failure to work with petitioner to plan and [*5]ameliorate the conditions that led to the children's removal (see Social Services Law § 384-b [7] [f] [3]) was based on her failure to acknowledge not only that the children stated that they were abused, but also that the court found, after a fact-finding hearing, that they were abused. Relatedly, we discern no error in Family Court denying the mother's motion to strike petitioner's expert testimony regarding evaluations of Makayla and Annabella. The court found that this testimony was "used for the purpose of simply giving context as to what was expected of the [mother] in relation to her children," and did not open the door for the mother to challenge the underlying findings of abuse.
We also find no merit in the mother's further contention that Family Court erred in denying her request for a Frye hearing as to certain validation techniques used by petitioner's expert during the children's evaluations. The testimony regarding those evaluations was proffered to give context to respondents' recommendations. Thus, any challenges to the methodology for the purposes of establishing that the abuse did or did not occur was irrelevant.[FN3] Finally, we are unpersuaded by the mother's remaining contention that Family Court erred in admitting records containing the sexual abuse evaluations of Makayla and Annabella because they were properly admitted under the business records exception to the hearsay rule (see Matter of James M.B. [Claudia H.], 155 AD3d 1027, 1030 [2017]; compare Matter of Jaden C. [Phillip J.], 90 AD3d 485, 487 [2011]).
The father argues that Family Court did not adequately consider Annabella and Caleb's best interests before terminating his parental rights because the court only considered the length of time that the children were in foster care and his refusal to acknowledge the allegations of sexual abuse, which, in his view, had been refuted. "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the children and there is no presumption that any particular disposition, including the return of the children to the parent, promotes such interests" (Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1509 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 914 [2019]; see Matter of Jason O. [Stephanie O.], 188 AD3d at 1467).
The evidence presented at the dispositional hearing reveals that the children have been in foster care since 2013 — a period of about six years at the time of the hearing. The record evidence also evinces that the children were happy with their foster parent. In contrast, the children demonstrated negative reactions before or after their visitation with respondents. Respondents, who failed to complete mental health counseling, offered no testimony or evidence that they had taken any steps or made meaningful progress to address the concerns that led to the children's removal or improve their situation so that the children could [*6]be returned to them. Particularly, the father continued to deny the sexual abuse committed against Makayla and Annabella, and he failed to attend most of the service plan review meetings in the years preceding the hearing. Given the children's lengthy stay in foster care, the foster parent's willingness to be an adoptive resource, respondents' unwillingness to participate in mental health counseling and to acknowledge the sexual abuse committed against Makayla and Anabella, and that there was no progress made by respondents in achieving the permanency goals, there is a sound and substantial basis in the record to support Family Court's determination that termination of the father's parental rights as to Annabella and Caleb was in their best interests (see Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d 1338, 1341 [2021], lv denied 37 NY3d 905 [2021]; Matter of Keadden W. [Hope Y.], 165 AD3d at 1509; Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1085-1086 [2015]). We have examined the parties' remaining contentions and find them to be without merit.
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: At oral argument, the mother also argued that the permanent neglect proceeding against her should have been dismissed given that the permanency goal was return to parent. However, since this argument was not raised in the mother's brief or supplemental brief, it is not properly before us (see Matter of Ryan P. v Sarah P., 197 AD3d 1393, 1396 [2021]).

Footnote 2: We are unpersuaded by the mother's further contention that counsel was ineffective for failing to raise this argument before Family Court, as the mother has failed to demonstrate "the absence of strategic or other legitimate explanation for counsel's alleged shortcomings" (Matter of Clark v Zwack, 40 AD3d 1224, 1226-1227 [2007] [internal quotation marks and citations omitted]).

Footnote 3: Even if we were to find otherwise, that the testimony was proffered to prove the abuse, the mother would not be entitled to a Frye hearing as the validation methods utilized, the Yuille protocol and Sgroi method, have been accepted by this Court and the Court of Appeals (see e.g. Matter of Nicole V., 71 NY2d 112, 121 [1987]; Matter of Richard SS., 29 AD3d 1118, 1123 [2006]; Matter of Thomas N., 229 AD2d 666, 668 [1996]). Thus, there is no indication that these methods are novel such that there must be a determination as to their reliability (see Parker v Mobil Oil Corp., 7 NY3d 434, 446-447 [2006]; Matter of Bethany F. [Michael F.], 85 AD3d 1588, 1589 [2011]).