■ In the Matter of VASHAUN P., a Child Alleged to be Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VENESHA P., Appellant. (Proceeding No. 1.) In the Matter of IMANI O. and Another, Children Alleged to be Permanently Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VENESHA P., Appellant. (Proceeding No. 2.) [861 NYS2d 453]—

Kavanagh, J. Appeals (1) from an order of the Family Court of Columbia County (Nichols, J.), entered July 31, 2007, which granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected, and (2) from an order of said court, entered July 31, 2007, which granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.

In February 2005, respondent voluntarily placed her children, Imani O. and Valencia P. (born in 2002 and 2004, respectively), in petitioner's custody and agreed to a plan which required respondent, in order to regain custody of the children, to locate and secure suitable housing for her and the children, as well as cooperate with petitioner in obtaining mental health services. It also required that she participate in classes designed to enhance her parenting skills. Shortly thereafter, respondent, without

giving notice to petitioner, relocated to New York City and, in December 2005, gave birth to a third child, Vashaun P. In August 2006, Family Court determined that Imani and Valencia were neglected children based upon respondent's failure to keep petitioner informed of her address, as well as her failure to participate in preparing a plan for the children's future or inquire about their status.

Thereafter, the New York County Department of Social Services commenced a proceeding (proceeding No. 1) pursuant to Family Ct Act article 10 to adjudicate Vashaun as a neglected child. Vashaun was temporarily removed from respondent's custody and this proceeding was transferred to Columbia County. Petitioner then commenced proceeding No. 2 pursuant to Social Services Law § 384-b to adjudicate Imani and Valencia to be permanently neglected. Family Court held a fact-finding hearing on both proceedings and ultimately found Vashaun to be neglected and Imani and Valencia to be permanently neglected and terminated respondent's parental rights with respect to Imani and Valencia.* Respondent now appeals.

Family Court found that Vashaun was a derivatively neglected child based upon its finding of neglect of Imani and Valencia. The court specifically pointed to the fact that respondent had not taken meaningful steps to obtain suitable housing for the children or provide them with appropriate care, as well as her failure to cooperate with petitioner in its effort to obtain necessary mental health services for her. "A finding of derivative neglect based upon conduct by a respondent toward another child may be made where the 'conduct demonstrates such a flawed understanding of parental duty to protect children from harm so as to create a substantial risk of harm for any child in his or her care' " (*Matter of Natasha RR.*, 27 AD3d 788, 789 [2006], quoting *Matter of Melissa L.*, 276 AD2d 856, 857 [2000], *lv denied* 96 NY2d 702 [2001]; *see Matter of Landon W.*, 35 AD3d 1139, 1141 [2006]). However, the prior finding of neglect "must be so proximate in time to the derivative proceeding so as to enable the factfinder to reasonably conclude that the condition still exists" (*Matter of Landon W.*, 35 AD3d at 1141; *see Matter of Henry W.*, 30 AD3d 695, 696 [2006]; *Matter of Natasha RR.*, 27 AD3d at 789; *Matter of Hunter YY.*, 18 AD3d 899, 900 [2005]).

Here, respondent was found to have neglected Imani and Valencia in August 2006 as a result of her near total failure to live up to her obligations to provide for their basic needs. She not only failed to provide them with a proper shelter, but she

---

* A petition charging respondent with abandoning Imani and Valencia was dismissed by Family Court.

simply refused to recognize the need to participate in programs designed to enhance her relationship with her children and programs that would provide her with the basic tools required for their care and well-being. She did not, as required, keep petitioner informed of the numerous changes in her address while the children were in foster care and maintained only sporadic contact with them during that time.

A foster care caseworker employed by petitioner testified that while respondent "attended an initial session, two subsequent sessions and one session with a psychiatrist," her file was subsequently closed because of her failure to attend scheduled sessions. The record also indicates that after moving to New York City, respondent, for a time, lived in a homeless shelter and failed to provide petitioner with adequate contact information regarding her whereabouts. Additionally, at the time the neglect proceeding was heard, respondent was renting a single room in the Bronx and had not obtained suitable housing for her family. Finally, both the caseworker and respondent testified that, as of the date of the hearing, respondent had not yet begun participating in parenting classes and did not attend scheduled visits with her children.

These conditions continued to exist when the derivative neglect hearing regarding Vashaun was held (*see Matter of Suzanne RR.*, 48 AD3d 920, 922 [2008]; *Matter of Landon W.*, 35 AD3d at 1141; *Matter of Natasha RR.*, 27 AD3d at 789). Indeed, respondent by her conduct has demonstrated that her judgment as to the care she rendered Imani and Valencia was so profoundly impaired as to justify Family Court's conclusion that she is simply not able to provide for Vashaun's health, well-being or his basic needs (*see Matter of Suzanne RR.*, 48 AD3d at 922; *Matter of Landon W.*, 35 AD3d at 1141; *Matter of Natasha RR.*, 27 AD3d at 789). As a result, the finding that Vashaun is a derivatively neglected child is supported by a clear preponderance of the credible evidence introduced at the hearing (*see* Family Ct Act § 1046 [b] [i]; *Matter of Brandi U.*, 47 AD3d 1103, 1104 [2008]; *Matter of Evelyn B.*, 30 AD3d 913, 914 [2006], *lv denied* 7 NY3d 713 [2006]).

Turning next to the petition alleging that respondent permanently neglected Imani and Valencia, the agency must establish that it made diligent efforts to promote and strengthen the parent-child relationship, and that those efforts, through no fault of the agency, failed (*see* Social Services Law § 384-b [7]; *Matter of Gregory B.*, 74 NY2d 77, 86 [1989]; *Matter of George M.*, 48 AD3d 926, 927 [2008]; *Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]). In that

regard, the agency is required to cooperate with the parent to develop a plan that is designed to provide the children and family with appropriate services. Here, after Imani and Valencia were placed in foster care in February 2005, petitioner referred respondent to Berkshire Farm Intensive Transitional Services which "assist[s parents] with home finding, . . . visitation [and] find[ing] employment." However, within a month of that referral, respondent was discharged from that program because she refused to attend meetings and was described by program personnel as "difficult to get . . . to come in as she was asked to do." Petitioner then arranged for respondent to receive services through Columbia County Mental Health, but after completing an initial evaluation and attending several appointments, respondent unilaterally ceased participation in the program and did not cooperate with petitioner's ongoing efforts to provide her with counseling. Respondent then, without notifying petitioner, moved to New York City in April 2005 and, for the next eight months, had no contact with petitioner. Upon learning that respondent was residing in Nassau County, petitioner attempted, without success, to arrange for respondent to visit with her children at agency expense and sought to involve her with appropriate mental health services. While some visitation did in fact take place, it was at best sporadic and, for long periods of time, respondent—despite petitioner's diligent efforts—had little or no contact with her children.

In that regard, respondent claims that petitioner should have honored her request that the children be relocated and placed in a foster care setting nearer to where she was then residing. Petitioner concluded that relocating the children at that time would not have been in their best interests (see Social Services Law § 384-b [7] [a]), because they had been living together with the same foster care family for almost two years, and had made significant progress in successfully adjusting to this arrangement. Moreover, respondent's persistent failure to maintain contact with the agency, as well as the numerous changes she had made in her own living arrangements while the children were in foster care, coupled with her history of not regularly visiting her children, provided ample support for petitioner's conclusion that moving the children at that time was not in their best interests.

We are also satisfied that petitioner proved, by clear and convincing evidence, that respondent, although physically and financially able to do so, failed to maintain contact with or plan for the children for 15 out of the most recent 22 months that they were in foster care (see Social Services Law § 384-b [3] [g]

[i]; [7] [a]; *Matter of George M.*, 48 AD3d at 928; *Matter of Melissa DD.*, 45 AD3d at 1220). She did not visit the children for over a year beginning in April 2005, and then had only sporadic contact with them. Further, respondent's failure to obtain suitable housing for the children, or to participate in mental health services despite those services having been made readily available to her, only served to reinforce the conclusion that she was not prepared to accept responsibility for her children's future (*see* Social Services Law § 384-b [7] [a]; *Matter of Melissa DD.*, 45 AD3d at 1221). Finally, evidence presented at the hearing established that respondent had the means at her disposal to maintain contact with the children and to participate in a meaningful way in planning for their future (*see* Social Services Law § 384-b [7] [a]). During this period, she received Supplemental Social Security Income benefits and, for much of the time that she resided in Nassau County, was gainfully employed. In addition, she received substantial financial assistance throughout this period from petitioner to enable her to visit her children. As stated by Family Court, respondent had the wherewithal to care for her children, but instead chose to "under[take] a course of conduct not in [their] best interest[s], [and] to pursue avenues and desires of her own."

Mercure, J.P., Rose, Kane and Malone Jr., JJ., concur. Ordered that the orders are affirmed, without costs.