■ In the Matter of ELIJAH NN., a Child Alleged to be Neglected. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LYNETT NN., Appellant. [888 NYS2d 221]—

Garry, J. Appeal from an order of the Family Court of Dela-ware County (Becker, J.), entered July 30, 2008, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.

The child who is the subject of this proceeding was born to respondent in December 2007. Respondent suffers from physical limitations, cognitive difficulties and memory problems result-ing from multiple sclerosis, a seizure disorder, and a brain injury. Before and during the pregnancy, petitioner assisted her with scheduling, transportation and managing her medications through its Adult Protective Services and Public Health Nurs-ing divisions. In addition, petitioner managed respondent's fi-nances as her representative payee after allegedly learning that she habitually spent her monthly Social Security benefits within days of receiving them on such purchases as marihuana and cigarettes. During respondent's pregnancy, she allegedly tested positive for marihuana. In addition, she did not have a stable living situation, moving frequently before and during her pregnancy. One day after the child was born, petitioner com-menced this proceeding seeking a determination pursuant to Family Ct Act article 10 that he was neglected on the ground that respondent's limited physical and cognitive functioning and her continued high-risk behaviors hindered her ability to care for him safely and appropriately.

After a hearing pursuant to Family Ct Act § 1027, respondent and the child were placed together in a foster home. Shortly thereafter, petitioner moved by order to show cause to have the child placed in its custody. With respondent's consent, the child was placed in foster care pending the disposition of this proceed-ing. After a fact-finding hearing in April 2008, Family Court determined the child to have been neglected. A dispositional hearing followed in July 2008, after which the court continued the child's placement in foster care with a permanency goal of returning him to respondent's custody. Respondent now ap-peals.

Respondent first contends that Family Court improperly considered postpetition evidence during the fact-finding hear-ing, consisting of the testimony of the foster mother—who temporarily housed respondent and her child after the child's

birth—as to respondent's behavior, memory lapses, and parenting skills during that period. The court also considered a Child Protective Services summary investigative report addressing events that took place both before and after the petition was filed. "In general, postpetition evidence should not be considered during a fact-finding hearing" (*Matter of Ashley X.*, 50 AD3d 1194, 1196 [2008] [citation omitted]), although such evidence may be admitted for impeachment purposes when the respondent is given sufficient notice to avoid surprise or prejudice (*see id.*; *Matter of Jewle I.*, 44 AD3d 1105, 1107 [2007]). Here, upon the objection of respondent's counsel, the court ruled that it would consider postpetition evidence to the extent that it was admitted to prove respondent's impairments existing at the time the petition was filed. Thus, the evidence was admitted "to prove . . . factual matters" and not for the purpose of impeachment (*Matter of Ashley X.*, 50 AD3d at 1196). Further, petitioner did not move to conform the petition's pleadings to the proof except with regard to the child's date of birth, nor did it file any additional petitions (*see Matter of Jessica YY.*, 258 AD2d 743, 747 [1999]; *Matter of Sara X.*, 122 AD2d 795, 797 [1986], *appeal dismissed* 69 NY2d 707 [1986]). Although the evidence of respondent's parenting abilities would properly have been considered for dispositional purposes (*see Matter of Darlene T.*, 28 NY2d 391, 396 [1971]), it should not have been considered at the fact-finding hearing.

Respondent contends that in the absence of the postpetition evidence, the remaining evidence was insufficient to support Family Court's determination of neglect. A neglected child, as defined by statute, specifically includes one "whose physical, mental or emotional condition has been impaired *or is in imminent danger of becoming impaired*" (Family Ct Act § 1012 [f] [i] [B] [emphasis added]). In determining whether a child is in actual or imminent danger of impairment, the court must "focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior" (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]). Further, the parent's failure to "exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i] [B]) "must be actual, not threatened" (*Nicholson v Scoppetta*, 3 NY3d at 370). "Actual injury or impairment need not be found, as long as a preponderance of the evidence establishes that the child is in imminent danger of either injury or impairment" (*Matter of Katie R.*, 251 AD2d 698, 699 [1998], *lv denied* 92 NY2d 809 [1998] [internal quotation marks and citations omitted]; *accord Matter of Markus MM.*, 17 AD3d 747, 748 [2005]).

The prepetition evidence was sufficient to support the finding

of neglect. While respondent's use of marihuana during her pregnancy, standing alone, would not have been sufficient (*see Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79 [1995]; *Matter of Markus MM.*, 17 AD3d at 748), the testimony of several social services providers amply demonstrated the severe impact of respondent's cognitive deficits and memory problems on her ability to exercise a "minimum degree of care" (Family Ct Act § 1012 [f] [i] [B]) for her child and even for herself. There was testimony that, even with frequent reminders, respondent regularly forgot her medical appointments and could not manage her regimen of medications without the assistance of a public health nurse. Even with this assistance, she had difficulty remembering to take her medications on time, resulting in at least one seizure during her pregnancy caused by a medication error. She could not manage her finances without assistance and could not maintain stable housing, moving at least four times during her pregnancy and choosing not to stay in an appropriate adult home located for her by petitioner some weeks before the child's birth. There was evidence that her mother's home, where she was living when the petition was filed, was unsuitable because of, among other things, the mother's alleged alcohol abuse and a volatile mother-daughter relationship that included physical altercations. A psychologist who evaluated respondent testified that she had a borderline IQ and an extremely low ability to retain and store memory. He opined that respondent's cognitive and memory limitations would prevent her from being able to care for a child without the consistent presence and involvement of another person. Finally, respondent herself testified that, although she wanted her child, she could not care for him without assistance. Giving "great deference" to the court's determination (*Matter of Mary Kate VV.*, 59 AD3d 873, 875 [2009], *lv denied* 12 NY3d 711 [2009]), we find that a preponderance of the evidence established that the child was neglected within the meaning of the statute.

Rose, J.P., Kane, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.