■ In the Matter of LAMARCUS E., a Child Alleged to be Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JONATHAN E., Appellant. [942 NYS2d 647]—

Spain, J.P. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered July 28, 2010, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.

Respondent, the father of the subject child (born in 2002), was granted custody in 2008 in a contested proceeding against the child's mother. In August 2009, while under petitioner's supervision, respondent informed petitioner that he intended to

relocate to Connecticut in October 2009 to obtain employment and live with his girlfriend, but that he would not be taking his then seven-year-old son with him. Petitioner rejected respondent's request to accept the child into a voluntary placement. After Family Court and petitioner rejected three different plans proposed by respondent for the future care of the child, petitioner filed a neglect petition against him alleging that he intended to imminently implement his plan to permanently relocate to Connecticut without the child and without any viable plan for the child's care. Upon receipt of the petition, the court immediately removed the child and placed him in the temporary custody of petitioner, and respondent relocated to Connecticut as planned. Following a fact-finding hearing, respondent—who remained living out of state—was found to have neglected the child and, after a dispositional hearing, the court continued the child's placement with petitioner in foster care. Respondent appeals and we affirm.

Previously, the appellate attorney assigned to represent the child reported in her brief that she had not personally met with or spoken to her client. Finding her explanation inadequate, we withheld decision and ordered the appointment of a new attorney for the child (*Matter of Lamarcus E. [Jonathan E.]*, 90 AD3d 1095 [2011]), who now appears on behalf of the child.

A finding of neglect does not require actual injury but, rather, " 'an imminent threat that such injury or impairment may result' " (*Matter of Joseph RR. [Lynn TT.]*, 86 AD3d 723, 724 [2011], quoting *Matter of Shalyse WW.*, 63 AD3d 1193, 1195-1196 [2009], *lv denied* 13 NY3d 704 [2009]; *see* Family Ct Act § 1012 [f] [i] [A], [B]; *Matter of Afton C. [James C.]*, 17 NY3d 1, 8-9 [2011]; *Nicholson v Scoppetta*, 3 NY3d 357, 368-369 [2004]). In addition, the impairment "must be a consequence of the parent's failure to exercise a minimum degree of parental care" (*Matter of Afton C. [James C.]*, 17 NY3d at 9; *see Nicholson v Scoppetta*, 3 NY3d at 368, 370). Parental behavior, in turn, is evaluated by asking whether, under the circumstances, "a reasonable and prudent parent [would] have so acted" (*Nicholson v Scoppetta*, 3 NY3d at 370; *see Matter of Kaleb U. [Heather V.— Ryan U.]*, 77 AD3d 1097, 1098 [2010]).

Family Court based its determination of neglect upon respondent's plan to effectively abandon the care and custody of his child which, absent the intervention of petitioner, the court found would "certainly" have led to the impairment of the child's physical, mental or emotional condition. Upon learning of his plan to leave his child behind without a viable caretaker, petitioner's caseworkers had multiple discussions with respon-

dent regarding the child's future. One caseworker testified that, during these discussions, respondent told her that he did not want to take the child along because he was "too much to handle" and he did not want to be responsible for facilitating—from Connecticut—visitation with the child's mother; he persistently requested that the child be placed in foster care.

Significantly, although Family Court had previously ordered respondent not to relocate with the child out of state, he told a caseworker that he would not be taking his child with him even if granted the court's permission to do so and he did not file a petition to modify that restriction. In addition, while respondent implies in his brief that petitioner's refusal to permit him to voluntarily place his child in foster care is the basis for the neglect finding against him, a voluntary placement is appropriate only where a parent is unable to care for his or her child, and not where a parent is simply unwilling to do so, as here (see Social Services Law § 384-a; Matter of Chantel ZZ., 279 AD2d 669, 672 [2001]). Indeed, respondent's knowledge that his child would be placed in foster care upon his refusal to take him to Connecticut—fully aware that this placement would result in a charge of neglect against him—reflects his clear intention to abdicate his parental obligations, including his responsibility to adequately plan for his child's needs, thereby placing the child at risk (see Matter of Jalil McC. [Denise C.], 84 AD3d 1089, 1090 [2011]; Matter of Janice G. [Linda H.], 70 AD3d 1210, 1211 [2010]; Matter of Trebor UU., 279 AD2d 735, 737-738 [2001]; Matter of Heidi CC., 270 AD2d 528, 530-531 [2000]).

Notably, respondent's suggested alternatives to placing his child in foster care reflect a glaring and fundamental misunderstanding of his responsibilities as a parent. He expressed an intention to relinquish custody to the child's mother notwithstanding that she had also lost custody of her other children and was, by court order, permitted only supervised visitation with the child. Respondent also suggested that his upstairs neighbor, whose last name he did not know, care for the child. However, the neighbor had no bed for the child and no plan for his necessary transportation, and the neighbor planned to utilize as babysitters the child's paternal grandparents—who had previously been determined by Family Court to be inadequate caregivers—and was unaware that the child's placement with her was intended to be long term (see Matter of Shannen AA. [Melissa BB.], 80 AD3d 906, 907-908 [2011], lv denied 16 NY3d 709 [2011]; Matter of Caleb C., 11 AD3d 737, 738 [2004]; Matter of Heidi CC., 270 AD2d at 530).

Respondent's contention that his plans, of which his child

was unfortunately aware, did not place the child in imminent danger of impairment is also contradicted by the record. When respondent decided to relocate, the child was doing relatively well in his care. However, in early October 2009, the child's behavior began to decline and he became exceedingly difficult to handle in school. Further, respondent reported to petitioner that, during this period, the child seemed depressed, was not eating as usual and he often sat and stared out the window. Thus, although not explicitly stated by Family Court, the record reveals that respondent also contributed to the impairment of his child's mental or emotional health (see Family Ct Act § 1012 [h]; Matter of Chantel ZZ., 279 AD2d at 671-672).

Finally, respondent's contention at the hearing that had petitioner not intervened he would have remained in New York to care for his child is belied by his actions and statements to the contrary. The record reflects that respondent, among other things, repeatedly told petitioner's caseworkers, who Family Court credited, that he was moving at the end of October no matter what and that nobody could tell him that he could not go. Under these circumstances, and according deference to the court's credibility determinations, the record fully supports its determination that respondent's blatant unwillingness to provide proper care and supervision for his child placed the child in imminent danger of impairment (see Matter of Chassidy CC. [Andrew CC.], 84 AD3d 1448, 1449-1450 [2011]).

Rose, Kavanagh, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.