Spain, J.
Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered January 23, 2012, which granted petitioner’s applications, in two proceedings pursuant to Family Ct Act article 10, to, among other things, adjudicate respondent’s child to be neglected.
Respondent is the mother of three children, the older two of whom were born in 2005 and 2006. These older children were *1399 removed from respondent’s care and, in October 2009, she admitted that she had neglected them by failing to seek mental health treatment. In December 2010, petitioner removed the youngest child, Shay-Nah FF. (hereinafter the infant), from respondent’s custody four days after birth and, shortly thereafter, commenced the first of these proceedings against respondent alleging that the infant was neglected. Following a hearing in January 2011 (see Family Ct Act § 1028), Family Court granted petitioner temporary custody of the infant with unsupervised visitation to respondent, subject to an order of protection that prohibited her from having any other persons present in her home during visitation. In March 2011, respondent consented to a permanent neglect adjudication with respect to the older children and received a suspended judgment with supervised visitation. Soon thereafter, petitioner commenced the second of these proceedings alleging that respondent had violated the order of protection as to the infant by allowing the infant’s father to be present during an unsupervised visit after he was found hiding in the bathroom by a caseworker during an unannounced home visit.
In January 2012, Family Court found that respondent’s history of neglect of the older children—which included allegations of excessive corporal punishment, a failure to treat her mental illness, and a failure to provide housing and medical care—put the infant at imminent risk of harm. Family Court further found that respondent had failed to treat her mental illness during her pregnancy with the infant and, significantly, that her mental illness caused her to be inappropriately aggressive with her children. Upon respondent’s admission, Family Court also found that she had violated the order of protection with respect to the infant. Finding that this conduct constituted derivative and direct neglect of the infant, Family Court directed that respondent remain under petitioner’s supervision for one year. Respondent now appeals, arguing that there was insufficient evidence to support Family Court’s finding of neglect, and we affirm.[1]
A charge of neglect must be proven by a preponderance of the evidence showing “that a child’s physical, mental or emotional condition was harmed or is in imminent danger of harm as a *1400 result of a failure on the part of the parent to exercise a minimum degree of care” (Matter of Stevie R. [Arvin R.], 97 AD3d 906, 907 [2012]; see Family Ct Act § 1012 [f] [i] [B]). Significantly, actual injury is not required to sustain a finding of neglect (see Matter of Lamarcus E. [Jonathan E.], 94 AD3d 1255, 1256 [2012]), and proof of abuse or neglect of one child is admissible to support a finding of neglect against another child (see Family Ct Act § 1046 [a] [i]; Matter of Michael N. [Jason M.], 79 AD3d 1165, 1167 [2010]; Matter of Vashaun P., 53 AD3d 712, 713 [2008]).
The record demonstrates, among other things, that respondent failed to address the conditions that led to the prior neglect finding regarding the older children, which was entered upon her admission that she had failed to treat her mental illness. The older children were originally removed from respondent’s care because, as a result of her untreated mental illness, she had poor impulse and anger control, which caused her to inflict excessive corporal punishment on them; in addition, she had failed to provide appropriate medical care, housing and economic support for them. Petitioner’s records indicate that, prior to their removal, respondent slapped the then two-year-old child in the face, causing injury, and punched the then three-year-old child in the face and back, causing injury. At the time of the within proceedings, l1/2 years after the older children were placed in foster care, they had not been returned to respondent.
By the time of the infant’s December 2010 birth, respondent had made some progress, namely, she had secured housing and income and successfully completed a parenting course. However, testimony indicated that she had secured income only in the month preceding the hearing, owed past-due rent, and was looking for a new apartment because she had a physical altercation with a neighbor, for which respondent was referred to anger management classes. The record further indicates that respondent continued to be unduly frustrated with the older children and reacted with inappropriate force and yelling, which was the reason that her visits with them were required to be supervised. Notably, between July 2010 and October 2010, respondent attended only 30% of her clinical sessions that were designed to teach her to appropriately discipline and supervise the older children. Moreover, several months after the infant’s birth, respondent consented to an adjudication of permanent neglect with respect to the older children.
Petitioner also presented evidence that respondent did not comply with her prescribed mental health treatment during her pregnancy, and she failed to utilize prenatal care until the last *1401 two months of her pregnancy despite her caseworker’s encouragement to do so (see Matter of Stevie R. [Arvin R.], 97 AD3d at 907; Matter of Xavier II., 58 AD3d 898, 900 [2009]). Respondent, who was diagnosed with depressive disorder, post-traumatic stress disorder and bipolar disorder,[2] failed to attend her mental health appointments for the last three months of her pregnancy, and she also stopped taking her medications. While respondent claimed that she stopped her medications upon the advice of her doctor, her failure to attend her mental health appointments altogether was unexplained and testimony indicated that she only engaged in mental health treatment “off and on” prior to her pregnancy.
In our view, Family Court properly noted that respondent’s violation of the order of protection evidenced impaired parental judgment (see Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1241 [2012]; Matter of Paige AA. [Anthony AA.], 85 AD3d 1213, 1217 [2011], lv denied 17 NY3d 708 [2011]). Viewing the record in its totality and according deference to Family Court’s credibility determinations, we conclude that there was a sound and substantial basis for Family Court’s neglect determination (see Matter of Vashaun P., 53 AD3d at 713-714; Matter of Suzanne RR., 48 AD3d 920, 922 [2008]; Matter of London W., 35 AD3d 1139, 1141 [2006]; Matter of Markus MM., 17 AD3d 747, 748-749 [2005]; Matter of Brandon OO., 289 AD2d 721, 722 [2001]; Matter of Daequan FF., 243 AD2d 922, 923 [1997]).
Finally, we reject respondent’s assertion that she was deprived of meaningful representation by her counsel’s request that Family Court consider postpetition evidence during the fact-finding phase. Generally, postpetition evidence is not considered during a fact-finding hearing (see Matter of Elijah NN., 66 AD3d 1157, 1159 [2009], lv denied 13 NY3d 715 [2010]; Matter of Ashley X., 50 AD3d 1194, 1196 [2008]; Matter of Jessica YY., 258 AD2d 743, 747 [1999]). Here, however, respondent’s counsel had a legitimate strategy for requesting that the court consider postpetition evidence because, at the time of counsel’s request, such evidence was entirely favorable to respondent and Family Court reasonably granted that request. The positive postpetition evidence, although ultimately unavailing, primarily indicated that respondent experienced fewer difficulties in caring for the infant than she had in caring for the two older children. It was not until after Family Court ruled that postpetition evidence would *1402 be admissible that respondent violated the order of protection. Counsel’s request reflected a legitimate trial strategy at the time it was made, and counsel effectively cross-examined petitioner’s witnesses and zealously advocated for increased visitation and the return of the infant throughout the proceedings (see Matter of Ramsey H. [Benjamin K.], 99 AD3d 1040, 1043-1044 [2012], lv denied 20 NY3d 858 [2013]; Matter of Fay GG. [John GG.], 97 AD3d 918, 920-921 [2012]). Accordingly, we find that respondent received meaningful representation (see Matter of Brenden O., 20 AD3d 722, 723 [2005]).
Rose, J.E, Lahtinen and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

. Although it appears that the infant has been returned to respondent’s custody and the one-year order of supervision has, presumably, expired, respondent’s appeal is nonetheless not moot because a neglect determination creates “ ‘a permanent and significant stigma’ ” that may adversely affect respondent in future proceedings (Matter of Mahogany Z. [Wayne O.], 72 AD3d 1171, 1172 [2010], lv denied 14 NY3d 714 [2010], quoting Matter of Matthew C., 227 AD2d 679, 680 [1996]).

. While there is conflicting evidence in the record regarding whether respondent has been diagnosed with bipolar disorder, both she and her clinician testified that she has bipolar disorder and respondent testified that she is on medication for bipolar disorder.