■ In the Matter of ALEXANDER Z., a Child Alleged to be Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; MELISSA Z., Appellant. (Proceeding No. 1.) In the Matter of ALEXANDER Z., a Child Alleged to be Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; JIMMY Z., Appellant. (Proceeding No. 2.) In the Matter of ENRIQUE Z., a Child Alleged to be Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; MELISSA Z., Appellant. (Proceeding No. 3.) In the Matter of ENRIQUE Z., a Child Alleged to be Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; JIMMY Z., Appellant. (Proceeding No. 4.) [11 NYS3d 288]—

Garry, J. Appeals from two orders of the Family Court of Albany County (Kushner, J.), entered May 12, 2014, which, among other things, granted petitioner's applications, in four proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.

Respondent Melissa Z. (hereinafter the mother) and respondent Jimmy Z. (hereinafter the father) have six children together, the two youngest of whom (born in 2011 and 2013) are the subjects of these proceedings. Respondents' four older children were the subjects of separate permanent neglect and termination proceedings in which this Court recently affirmed orders that revoked a suspended judgment and terminated respondents' parental rights (*Matter of Sequoyah Z. [Melissa Z.]*, 127 AD3d 1518 [2015]). Each of the subject children was born during the pendency of the proceedings involving the older children. Petitioner removed each of the subject children from respondents' care within a few days after their births and commenced these derivative neglect proceedings shortly thereafter, in October 2011 as to the older child and March 2013 as to the younger child.

During the joint fact-finding hearing in these derivative neglect proceedings, petitioner moved for Family Court to take judicial notice of a permanency report and certain decisions and orders involving respondents' children that were entered between July 2012 and November 2013. The court granted the motion, despite respondents' opposition, and took judicial notice of all of the documents. Petitioner relied solely upon these documents as its case-in-chief and, following the close of proof, moved to amend the petitions to conform to the evidence. Family Court granted this motion over respondents' objections and determined that respondents had derivatively neglected the subject children. Following a dispositional hearing, the court placed the subject children in petitioner's custody. Respondents appeal.

Initially, we reject respondents' contention that Family Court erred in granting petitioner's motions. As respondents contend, postpetition evidence is generally inadmissible in neglect proceedings (*see Matter of Elijah NN.*, 66 AD3d 1157, 1159 [2009], *lv denied* 13 NY3d 715 [2010]; *Matter of Ashley X.*, 50

AD3d 1194, 1196 [2008]).[1] However, petitioner followed the proper procedure in moving to amend the petitions to include the postpetition proof (*see Matter of Angel L.H. [Melissa H.]*, 85 AD3d 1637, 1637 [2011], *lv denied* 17 NY3d 711 [2011]; *Matter of Amanda RR.*, 293 AD2d 779, 780 [2002]; *compare Matter of Elijah NN.*, 66 AD3d at 1159; *Matter of Jessica YY.*, 258 AD2d 743, 747 [1999]).

As respondents note, the procedure to be followed in amending a petition to conform to the proof in a Family Ct Act article 10 proceeding is established by Family Ct Act § 1051 (b).[2] This statute specifically requires that a respondent be allowed "reasonable time to prepare to answer the amended allegations" (Family Ct Act § 1051 [b]). Here, as parties to the proceedings, respondents were fully familiar with the facts and issues addressed in the documents. At a pretrial conference, they received "reasonable advance notice" (*Matter of "Baby Girl" Q.*, 14 AD3d 392, 393 [2005], *lv denied* 5 NY3d 704 [2005]) that this proof would be considered; the documents were specifically discussed at this conference, and copies were provided to the parties' counsel. Accordingly, no surprise or prejudice resulted from the amendment (*see Matter of Ashley X.*, 50 AD3d at 1196; *Matter of Nikole B.*, 263 AD2d 622, 623 [1999]). Although respondents now contend that they were not given the requisite reasonable time to respond, they did not request a reopening of the proof, an opportunity to answer or an adjournment, nor have they shown that they would have been able to controvert any of the findings in the decisions and orders at issue if they had been given additional time (*see Matter of Michelle S.*, 195 AD2d 721, 722 [1993]; *see also Matter of Kila DD.*, 28 AD3d 805, 806 [2006]). We note that substantial delays had already taken place in these proceedings, as well as those involving the older children, caused at least in part by respondents' actions and omissions (*see Matter of Sequoyah Z. [Melissa Z.]*, 127 AD3d at 1521 n 4). In light of the attendant circumstances, and considering the additional delay that would necessarily have resulted had petitioner been compelled to file new petitions, we find no abuse of Family Court's "broad discretion" here (*Matter of Hailey XX. [Angel XX.]*, 127 AD3d 1266, 1267 [2015]).

---

**1.** In addition to other documents, petitioner wished Family Court to consider the July 2012 decision that respondents' parental rights to the older children should be terminated, the July 2012 order suspending judgment, and the November 2013 decision that the suspended judgment should be revoked.

**2.** Family Court improperly referenced a provision of the CPLR in the course of the proceedings (*see* Family Ct Act § 165 [a]).

Next, petitioner met its burden to establish that respondents derivatively neglected the subject children. Evidence that a parent neglected a child is admissible to prove that the parent neglected another child (*see* Family Ct Act § 1046 [a] [i]), but may not provide the sole basis for a determination of derivative neglect unless the parent's past conduct demonstrates "fundamental flaws in the [parent's] understanding of the duties of parenthood—flaws that are so profound as to place any child in his or her care at substantial risk of harm" (*Matter of Brad I. [Brad J.]*, 117 AD3d 1242, 1243-1244 [2014] [internal quotation marks and citations omitted]; *see Matter of Kole HH.*, 61 AD3d 1049, 1053 [2009], *lv dismissed* 12 NY3d 898 [2009]). Such fundamental flaws may be proven by, among other things, evidence of "a longstanding pattern of neglect perpetrated by [the parent] upon [his or] her other children" (*Matter of Evelyn B.*, 30 AD3d 913, 914-915 [2006], *lv denied* 7 NY3d 713 [2006]).

The prior documents revealed that neglect proceedings were originally commenced against respondents in 2007, and that none of their six children had been in their care since 2009, other than the few days immediately after the subject children's births. Throughout that time, respondents had been unable to demonstrate the ability to adequately supervise the children so that they could be returned to respondents' care. Family Court (Duggan, J.) had initially issued a suspended judgment to give respondents "a last call" to demonstrate their capacity to care for the children, but that was revoked in November 2013—three months before the fact-finding hearing in the derivative neglect proceedings. One reason stated for the revocation of the suspended judgment was that respondents had been unable, despite petitioner's ongoing supervision and assistance, to maintain suitable housing for the children. At the time of the revocation hearing, the father was living in a shelter and the mother was residing with a registered sex offender. Additionally, they had violated the requirements of the suspended judgment by, among other things, failing to maintain contact with their caseworker or keep her advised of their whereabouts, and failing to progress to unsupervised visitation with the children. At that time, the four older children had been in foster care for more than three years, and the subject children had spent their lives in foster care.

As the father contends, the documents reveal that he had demonstrated better parenting skills than the mother; nevertheless, he manifested the same inability as the mother to, among other things, provide the children with suitable housing or progress to unsupervised visitation. Notably, respondents

chose not to testify at the fact-finding hearing, thus "permitting Family Court to draw the strongest possible negative inference against [them]" (*Matter of Collin H.*, 28 AD3d 806, 809 [2006]; *see Matter of Michael JJ. [Gerald JJ.]*, 101 AD3d 1288, 1291-1292 [2012], *lv denied* 20 NY3d 860 [2013]). Further, the prior decisions and orders were "sufficiently proximate in time such that it [could] be reasonably concluded that the conditions still exist[ed]" at the time of the fact-finding hearing (*Matter of Paige WW. [Charles XX.]*, 71 AD3d 1200, 1203 [2010] [internal quotation marks and citation omitted]; *see Matter of Ilonni I. [Benjamin K.]*, 119 AD3d 997, 998 [2014], *lv denied* 24 NY3d 914 [2015]). Accordingly, we find that the record demonstrates a persistent pattern of neglect of respondents' four older children, constituting proof by a preponderance of the evidence that they derivatively neglected the subject children (*see Matter of Michael N. [Jason M.]*, 79 AD3d 1165, 1167-1168 [2010]; *Matter of Evelyn B.*, 30 AD3d at 917; *Matter of D'Anna KK.*, 299 AD2d 761, 763 [2002]).

Lahtinen, J.P., McCarthy and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.

