Matter of Nina VV. (Wendy VV.) (2023 NY Slip Op 02355)

Matter of Nina VV. (Wendy VV.)

2023 NY Slip Op 02355

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

533267 
[*1]In the Matter of Nina VV. and Others, Alleged to be Neglected Children. Delaware County Department of Social Services, Respondent; Wendy VV., Appellant.

Calendar Date:March 30, 2023

Before:Garry, P.J., Lynch, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Teresa C. Mulliken, Harpersfield, for appellant.
Amy B. Merklen, County Attorney, Delhi, for respondent.
Veronica Reed, Schenectady, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Delaware County (Richard D. Northrup Jr., J.), entered April 26, 2021, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent (hereinafter the mother) is the mother of a child (born in 2003). The child lived with the mother "on and off" for the first half of her life, otherwise residing with a maternal aunt. Following one extended absence on the mother's part, the father was awarded physical custody of the child, with the mother retaining joint legal custody. At some point between 2016 and 2020, the mother petitioned to regain physical custody of the child, a petition that, according to the mother, failed because the child did not want to live with her. In early 2020, petitioner reached out to the mother to identify potential resources for the child, citing certain issues in the father's home; the mother failed to suggest any such resources. In July 2020, petitioner commenced this neglect proceeding against the mother, alleging, as relevant here, that she placed the child at imminent risk of harm by allowing the child to remain in the father's home.[FN1] After a fact-finding hearing, Family Court determined that the child has an untreated mental health diagnosis, performs poorly in school, has no primary care physician and "maintains an undefined relationship with a 23-year[-]old man," and thus the child's condition was impaired or in imminent danger of being impaired. The court further found that the harm to the child arose from the mother's abdication of her parental responsibilities and failure to exercise a minimum degree of care in providing the child with proper supervision, and the court accordingly adjudged the child neglected. The mother appeals.[FN2]
The mother's argument that she is not a "parent or other person legally responsible" for the child within the meaning of Family Ct Act § 1012 (e) is raised for the first time on appeal and is thus not properly before this Court (see Matter of Zyirr J. [Michael A.], 191 AD3d 784, 785 [2d Dept 2021]; Matter of Harmony S., 22 AD3d 972, 972-973 [3d Dept 2005]). In any event, her argument has no merit, as she is a parent of the child as defined in Family Ct Act § 1012 (l).[FN3]
Turning to the finding of neglect, "a party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004] [internal citation omitted]; see Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1538 [3d Dept 2022], lv denied 39 NY3d 904 [2022]). "Courts must evaluate parental behavior [*2]objectively: would a reasonable and prudent parent have so acted, or failed to act, under the circumstances then and there existing" (Nicholson v Scoppetta, 3 NY3d at 370 [citation omitted]; accord Matter of R.E. [S.F.], 212 AD3d 1009, 1010 [3d Dept 2023]). Additionally, one parent may be held accountable for the neglectful acts of the other if "he or she knew or should reasonably have known that the child was in danger" (Matter Robert YY., 199 AD2d 690, 692 [3d Dept 1993] [internal quotation marks and citation omitted]; see Matter of Vincent M., 193 AD2d 398, 403-404 [1st Dept 1993]; cf. Matter of Michael I., 276 AD2d 839, 840 [3d Dept 2000], lv denied 96 NY2d 701 [2001]).
The mother does not dispute that the child suffered physical, mental or emotional impairment while living in the father's home, nor does she deny her contemporaneous knowledge of the child's impairment. Rather, she asserts that she could not neglect the child while the child was out of her physical custody. We agree with Family Court's rejection of this argument, as parents may not avoid their responsibilities to their children merely because the children are not in their custody (see Matter of Clayton OO. [Nikki PP.], 101 AD3d 1411, 1412 [3d Dept 2012]; Matter of Erica B. [Quentin B.], 79 AD3d 415, 415 [1st Dept 2010], lv denied 16 NY3d 703 [2011]; see e.g. Matter of Chantel ZZ., 279 AD2d 669, 670-672 [3d Dept 2001]).
We further reject the mother's contention that her allegedly neglectful acts and omissions were too remote in time to be relevant. Notably, one of the allegations of neglect was based on events that occurred the same year the petition was filed: when approached by a caseworker to see whether the mother would be willing to allow the child to temporarily reside with her, the mother declined, despite knowing that the child's residence in the father's home was exposing her to the father's drug and alcohol abuse. The mother also declined to otherwise plan for the child, preferring that she go to a group home or adolescent facility. By failing to plan for her child and allowing her to remain in the father's home, the mother did not act as a reasonable and prudent parent, and this failure exposed the child to the imminent threat of further impairment (see Matter of Clayton OO. [Nikki PP.], 101 AD3d at 1412; Matter of Lamarcus E. [Jonathan E.], 94 AD3d 1255, 1256-1257 [3d Dept 2012]). "The fact that the child had disciplinary problems and [the mother] had initially sought assistance does not foreclose a finding of neglect where the parent thereafter refuses to act reasonably or to cooperate in efforts at addressing the child's problems" (Matter of Clayton OO. [Nikki PP.], 101 AD3d at 1412; see Matter of Jacklynn BB. [Donna CC.], 155 AD3d 1363, 1364 [3d Dept 2017]). Lastly, we are unpersuaded by the notion that the allegations of neglect in older indicated reports against the mother, including that the mother had neglectfully allowed the child to be sexually abused while [*3]in her care, could not have a causal nexus to the impairment the child suffered later in life, such as the child's alleged sexual relationship with an older man during her late teens. In light of the foregoing, Family Court's determination that the mother neglected the subject child is supported by a sound and substantial basis in the record, and it will therefore not be disturbed (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1079 [3d Dept 2022], lv denied 38 NY3d 912 [2022]; Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 749 [3d Dept 2021], lv denied 37 NY3d 915 [2021]).
Lynch, Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The petition further alleged that the mother derivatively neglected the father's four other children. Family Court held that the mother had no legal responsibility for the care of those children.
Footnote 2: As noted by the parties, despite the child turning 18 years old, this appeal is not moot, as "the finding of neglect could be used against [the mother] in the future" (Matter of Celine O. [Johanna Q.], 68 AD3d 1373, 1373 n 2 [3d Dept 2009], lv denied 15 NY3d 704 [2010]; see Matter of Lillian SS. [Brian SS.], 146 AD3d 1088, 1090 n 4 [3d Dept 2017], lvs denied 29 NY3d 919 [2017], 29 NY3d 992 [2017]).
Footnote 3: We note the attorney for the child's request that we address, parenthetically, the import of the mother's admissions at the time of the Family Ct Act § 1027 hearing; we do not rely on any such admissions upon review of this matter, and we thus decline the request to digress into addressing the issues regarding the requisite proof when a parent consents to temporary removal (see generally Matter of Tyrell FF. [Jaquasisa GG.], 166 AD3d 1331, 1333-1334 [3d Dept 2018] [Lynch, J., dissenting], appeal dismissed 33 NY3d 1063 [2019]).